IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BEN EWING,<br>    Plaintiff,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT<br>SERVICES, et al.,<br>    Defendants. | §<br>§<br>§<br>§<br>§  Civil Action No. 3:16-CV-3022-G-BK<br>§<br>§<br>§ |

**FINDINGS, CONLCUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was automatically referred to the undersigned United States Magistrate Judge for pretrial management. The Court now considers Defendants' *Amended Motion for Summary Judgment*, Doc. 11. For the reasons that follow, the motion should be **GRANTED**.

**I.  BACKGROUND**

Plaintiff filed this *pro se* action in state court seeking to avoid an impending foreclosure sale on the property located at 1108 Post Oak Lane, Dallas, Texas 75115 ("the Property"). In March 2006, Plaintiff granted a Deed of Trust lien on the Property to secure a promissory note in the sum of $223,250. Doc. 11 at 2. Since that time, Plaintiff apparently has struggled to meet his mortgage payment obligations and attempted to stave off foreclosure of the Property by filing four successive lawsuits.

**A.    The First Lawsuit**

Plaintiff's efforts to prevent foreclosure of the Property began in December 2010, when he filed suit in Texas state court against EMC Mortgage ("EMC"), Wells Fargo Home Mortgage ("Wells Fargo"), Mortgage Electronic Registration Service ("MERS"), and Hughes, Watters &

Askanase, LLP ("Hughes Watters"), asserting claims for wrongful foreclosure, breach of contract, fraud and negligence ("the First Lawsuit").  Doc. 11-1 at 4; *see Benjamin Ewing v. EMC Mortg. Corp., et al.*, No. 10-14889 in the 191st Judicial District of Dallas County, Texas.  As relief, Plaintiff sought an order, *inter alia*, extinguishing the defendants' claims to the Property, declaring all instruments signed between himself and the defendants null and void, and declaring that the foreclosure instituted against the Property was illegal and void.  Doc. 11-1 at 5, 7.  In September 2011, Plaintiff's claims against EMC, Wells Fargo, and MERS were dismissed with prejudice on summary judgment; his claims against Hughes Watters were dismissed without prejudice.  Doc. 11-1 at 19-22.

**B.     The Second Lawsuit**

In December 2012, Plaintiff filed another lawsuit in Texas state court to prevent the foreclosure of the Property ("the Second Lawsuit").  There, Plaintiff brought claims against EMC, Residential Credit Solutions, Inc. ("RCS"), and Hughes Watters, asserting claims for fraudulent misrepresentation, violations of the Truth in Lending Act ("TILA"), violations of the Fair Credit Reporting Act ("FCRA"), breach of fiduciary duty, unjust enrichment, civil conspiracy, usury and fraud, wrongful foreclosure, and suit to quiet title.  Doc. 11-2 at 2-15.  Plaintiff requested essentially the same relief he sought in the First Lawsuit.  *See* Doc. 11-2 at 5, 16.  The case was subsequently removed to this District.  Doc. 11-2 at 31-34; *see Benjamin Ewing v. EMC Mortg. Corp. et al.*, No. 3:13-CV-00343-M-BN (N.D. Tex.).  After Plaintiff failed to comply with four court orders, at the magistrate judge's recommendation, his claims were dismissed without prejudice for failure to prosecute.  Doc. 11-2 at 35-45.

C.   **The Third Lawsuit**

In October 2014, Plaintiff filed his third lawsuit in Texas state court to forestall the foreclosure of the Property ("the Third Lawsuit"). Plaintiff brought claims against EMC C/O First American Trustee Servicing Solutions ("First American") and RCS for fraudulent misrepresentation, violations of TILA and the FCRA, breach of fiduciary duty, unjust enrichment, civil conspiracy, usury and fraud, wrongful foreclosure, and suit to quiet title. Doc. 11-3 at 2, 6-15. Plaintiff requested essentially the same relief he sought in the First and Second Lawsuits. *See* Doc. 11-3 at 16-17. The action was subsequently removed to this District, where Plaintiff's claims were dismissed with prejudice for failure to prosecute. Doc. 11-3 at 32-33; *see Benjamin Ewing v. EMC Mortg. Corp., et al.*, No. 3:14-CV-03882-B (N.D. Tex.).

D.   **The Instant Lawsuit**

In August 2016, Plaintiff filed the instant action in state court, attempting to avoid foreclosure of the Property for a fourth time ("the Instant Lawsuit"). *See* Doc. 1-1 at 8. In his *Amended Petition to Enjoin Foreclosure with Temporary Restraining Order*, Plaintiff names Rushmore Loan Management ("Rushmore") and First American as defendants,[1] challenges Rushmore's right to foreclose on the Property, and alleges that (1) he is owed an accounting and redemption, (2) the statute of limitations prevents foreclosure of the Property, (3) Rushmore interfered with an existing contract, and (4) Rushmore violated the Texas Debt Collection Practices Act ("TDCPA"). Doc. 1-1 at 11-15, 16-17. As relief, Plaintiff seeks a judgement declaring, *inter alia*, that MERS and EMC's transfer of the lien was void, Rushmore lacks standing to foreclose on the Property, and Plaintiff has "clear and clean" title to the Property.

---

[1] Rushmore was the mortgage loan servicer for EMC, the Note holder and beneficiary of the Deed of Trust, prior to foreclosure of the Property, and First American is the trustee servicing company that Rushmore used to initiate foreclosure proceedings. Doc. 11 at 1-2.

Doc. 1-1 at 15-16. Defendants timely removed the case to this District on the basis of diversity jurisdiction. *See* Doc. 1; Doc. 3.

In April 2017, Defendants moved for summary judgment on all of Plaintiff's claims, seeking its attorneys' fees and an order preventing Plaintiff from filing any additional lawsuits in an attempt to impede the impending foreclosure without the Court's prior written permission. *See* Doc. 11. When Plaintiff failed to respond within the time permitted by Local Rule 7.1(e), the Court *sua sponte* extended his deadline to do so. Doc. 13. However, the extended deadline passed and Plaintiff did not respond.

## II. LEGAL STANDARD

If a party does not file a response to a summary judgment motion, the court is not permitted to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The court is, however, permitted to accept the movant's facts as undisputed when no opposition is filed. *Id.* Further, a summary judgment non-movant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute competent summary judgment evidence. *Assoc. of Taxicab Op, USA v. Yellow Checker Cab Co. of Dallas/Fort Worth, Inc.*, 910 F. Supp. 2d 971, 975 (N.D. Tex. 2012) (Godbey, J.) (citing *United States v. Dallas Area Rapid Transit*, 96 F.3d 1445 (5th Cir. 1996)); *see also Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991) (stating that the allegations in the plaintiff's unsworn complaint were insufficient to defeat summary judgment). Plaintiff's pleadings are not verified and, therefore, he has presented no summary judgment evidence. Accordingly, the Court accepts Defendants' evidence as undisputed.

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A dispute regarding a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* at 587.

### III. ARGUMENT & ANALYSIS

A.      **Claims Against First American**

Defendants move for summary judgment on Plaintiff's putative claims against First American, arguing that Plaintiff has failed to allege any claims against it. Doc. 11 at 2.  The Court agrees.  Although Plaintiff names First American in the style of this case, he asserts no claims against it in the body of his *Amended Petition*.  In fact, Plaintiff states in his *Amended Petition* that he brings this action "complaining of and about [Rushmore]" and under the section entitled "Parties and Service" lists only himself and Rushmore. Doc. 1-1 at 8.  Moreover, Plaintiff only references a single "Defendant" throughout the remainder of his *Amended Petition*. *See* Doc. 1-1 at 8-18.  Accordingly, First American is entitled to summary judgment on all of Plaintiff's claims.

### B. Claims Against Rushmore

Defendants move for summary judgment on Plaintiff's claims against Rushmore because they arise from the same subject matter as Plaintiff's claims in the Previous Lawsuits and, thus, are barred by the doctrine of *res judicata* or, in the alternative, by the doctrines of collateral estoppel and issue preclusion. Doc. 11 at 6-8. Upon review, the Court finds that Instant Lawsuit is indeed barred by *res judicata*.

A federal court asked to give *res judicata* effect to a Texas state court judgment must apply Texas' *res judicata* principles. *See E.D. Sys. Corp. v. Sw. Bell Tel. Co.*, 674 F.2d 453, 457 (5th Cir. 1982). Because the First Lawsuit resulted in a Texas state court judgment, Texas law applies. In Texas, *res judicata* "precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citation omitted). "Determining the scope of the 'subject matter' or 'transaction' of the prior suit requires 'an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action.'" *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). The party claiming the defense must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt*, 919 S.W.2d at 652 (citation omitted).

The Instant Lawsuit is premised on Plaintiff's assertion that Rushmore lacks the right to foreclose on the Property. This is so, Plaintiff alleges, because previous transfers of the Note and Deed of Trust between MERS and EMC were void. *See, e.g.*, Doc. 1-1 at 10 ("[A]t no time did MERS acquire the right to transfer the lien to EMC."), 11 ("Defendants have no standing to

6

foreclose on the Note and under the deed of trust because neither Defendant MERS, nor Defendant EMC is the actual Holder of the Note and the Deed of Trust."²), 15 ("[Rushmore] never acquired the note or deed of trust because prior transfers were null and void."), 15 (seeking a judgment declaring, *inter alia*, that "MERS only transferred void lien to EMC," and that "there was never an assignment of the Note or Deed of Trust from [the original lender] to MERS").

However, as stated above, Plaintiff already challenged MERS and EMC's right to foreclose on the Property in the First Lawsuit.  *See* Doc. 11-1.  There, the state court – a court of competent jurisdiction – dismissed Plaintiff's claims against MERS and EMC with prejudice. Doc. 11-1 at 19-22; *Amstadt*, 919 S.W.2d at 652.  Additionally, although Rushmore was not a party to the First Lawsuit, it is in privity with MERS and EMC.  Indeed, for Rushmore to defeat Plaintiff's claim in the Instant Lawsuit, it would have to prove that MERS and EMC have a valid right to the Property.  This was precisely the issue determined in the First Lawsuit.  *See Amstadt*, 919 S.W.2d at 653 ("Privity exists if the parties share an identity of interests in the same legal right that is the subject of the litigation.") (citation omitted).

Lastly, Plaintiff's claim in the Instant Action that Rushmore lacks authority to foreclose on the Property is predicated on an argument which, if not explicitly raised, certainly could have been raised in the First Lawsuit, to-wit: that the Note and Deed of Trust were improperly transferred between MERS and EMC.  *Amstadt*, 919 S.W.2d at 652.

Plaintiff brings additional claims in the Instant Lawsuit that were not brought in the First Lawsuit, in that he alleges that he is owed an accounting and redemption, that the statute of limitations bars Rushmore from foreclosing on the Property, that Rushmore is interfering with an

---

² While Plaintiff refers to MERS and EMC as "defendants" in this portion of his *Amended Petition*, neither is a named party in this action.

existing contract, and that Rushmore violated the TDCPA. However, these claims also arise out of the same subject matter as the First Lawsuit as they involve the same loan, foreclosure of the same property, the same property owner, the same deed of trust, and the same purported deficiencies in the foreclosure proceedings. *Amstadt*, 919 S.W.2d at 652; *see Koncak v. Deutsche Bank*, No. 3:14-CV-3289-B, 2015 WL 11120868, at *4 (N.D. Tex. Nov. 13, 2015) (Boyle, J.) (finding that *res judicata* barred the plaintiff's fraud claim raised in a second action where is arose from the "same basic subject matter" as the plaintiff's claims in the first action). Moreover, Plaintiff failed to file a response to the motion for summary judgment explaining or offering evidence why he could not bring these claims in the First Lawsuit. *Amstadt*, 919 S.W.2d at 652. Accordingly, Rushmore has established that *res judicata* bars Plaintiff's claims against it, and it is entitled to summary judgment.

**C.     Sanction**

Defendants request that the Court permanently enjoin Plaintiff from filing any suits "in an effort to cloud or otherwise affect the Property of Defendants, their successors or assignees, and their attorneys and representatives, their rights in the Property, their ability to enforce those rights, or the use or possession of the Property, without prior Order of this Court." Doc. 11 at 8. Defendants argue that such relief is warranted given that Plaintiff's repeated filings have "demonstrated his intent to obstruct or otherwise impede Defendants' exercise of its rights to the Property." Doc. 11 at 9. Plaintiff did not file a response in opposition to the requested relief, and, under the circumstances present here, the Court finds that such relief is warranted.

A plaintiff's status as a *pro se* litigant offers "no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 359 (5th

Cir. 1986). In fact, the United States Supreme Court has long recognized the courts' inherent, equitable power to levy sanctions against parties who abuse the litigation process. *See Roadway Express v. Piper*, 447 U.S. 752, 766 (1980). One such sanction is the imposition of a pre-filing injunction "to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citing *Farguson*, 808 F.2d at 360). In determining whether to impose a pre-filing injunction against a vexatious litigant, courts are not bound by the "traditional standards for injunctive relief," and instead consider

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* (citation omitted). Still, any pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360.

First, as outlined *supra*, in attempt to thwart foreclosure on the Property, Plaintiff has now filed four duplicative and, ultimately, meritless lawsuits against various related entities.

Second, Plaintiff has not advanced any good faith basis for filing these lawsuits. On the contrary, post-filing, Plaintiff has displayed extreme indifference to the ultimate resolution of these lawsuits by repeatedly ignoring court orders and refusing to meaningfully respond – if at all – to dispositive motions (just as in the Instant Lawsuit). *See, e.g.*, Doc. 11-2 at 39 (recommending that Plaintiff's Second Lawsuit be dismissed given his "manifest lack of interest in litigating [his] claims"); Doc. 11-3 at 32 (dismissing Plaintiff's Third Lawsuit where he failed to comply with court orders or express any desire to continue litigating the matter). Such conduct is emblematic of a bad-faith litigant using the judicial system to harass and delay, and is not the behavior one associates with a good-faith litigant seeking to vindicate legitimate legal

interests. *See Wilson v. Bexar Cty. Human Res.*, Nos. SA-10-CV-1018 FB & SA-10-CV-1028 FB, 2011 WL 233396, at *3 (W.D. Tex. Jan. 21, 2011) (finding that plaintiff lacked a good faith basis for filing lawsuits where his litigation history indicated an intent to harass "without any real belief that he [would] obtain the relief he s[ought]").

Third, Plaintiff's repeated filings impose a burden on his defendants and others involved in the foreclosure proceedings, including forcing them to retain counsel to defend against claims that were previously determined by a court to lack merit. These filings also burden the courts, which must expend time and resources on cases that Plaintiff ultimately failed prosecute.

Fourth, alternative sanctions are unlikely to deter Plaintiff, who has already demonstrated a proclivity for ignoring orders and judgments of the courts. *See Smith v. Texas*, No. H-12-469, 2012 WL 5868657, at *12 (S.D. Tex. Oct. 26, 2012), *adopted by* 2012 WL 5868618 (S.D. Tex. Jan. 30, 2013), *aff'd sub nom. Smith v. Shwartz*, 547 F. App'x 566 (5th Cir. 2013) (per curiam).

Accordingly, Defendant should be barred from filing any civil action in this Court in an attempt to cloud or otherwise affect the Property of Defendants, their successors or assignees, and their attorneys and representatives, their rights in the Property, their ability to enforce those rights, or the use or possession of the Property, unless he first obtains permission of the Court to do so. *See* FED. R. CIV. P. 11(b)(2) and (c)(1) (providing for sanctions against *pro se* litigants or attorneys); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802-03 (5th Cir. 2003) (a violation of any provision of Rule 11(b) justifies sanctions).

## IV. CONCLUSION

For the reasons stated herein, Defendants' Amended Motion for Summary Judgment, Doc. 11, should be **GRANTED**, and a sanction should be imposed against Plaintiff as described above.

**SO RECOMMENDED** on February 23, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE